IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PATRICK DEAN CUMMINS,

Plaintiff,

v.

U.S. ARMY CYBER COMMAND, *et al.*,

Defendants.

Civil Action No. 2:26-cv-133
Chief Judge Sarah D. Morrison
Magistrate Judge Jolson

## DECLARATION OF ANN-MARIE JARAMILLO

I, ANN MARIE JARAMILLO, pursuant to the provisions of 28 U.S.C. § 1746, do hereby declare the following is true and correct, to the best of my knowledge, information, and belief:

1.  I am a Department of the Army employee and served as the Freedom of Information Act (FOIA) Officer for the U.S. Army Network Enterprise Technology Command (NETCOM), a command subordinate to U.S. Army Cyber Command (ARCYBER), at the time of Plaintiff's FOIA request to NETCOM in November 2025. *See* Exhibit 1 (FOIA Request to NETCOM). I have served as NETCOM's FOIA Officer since October 2024.

2.  As part of my duties as NETCOM's FOIA Officer, I am responsible for responding to requests for records submitted or referred to NETCOM under the FOIA (5 U.S.C. § 552) and the Privacy Act (5 U.S.C. § 552a). My duties also include overseeing the processing of FOIA requests in accordance with Army Regulation (AR) 25-55, *The Department of the Army Freedom of Information Act Program*. I am familiar with the policies and practices of NETCOM related to searching for, processing, and releasing data in response to such requests.

1

3. In my role as NETCOM FOIA Officer, I coordinate FOIA request searches related to NETCOM using the Army 365 ("A365") eDiscovery tool. In my position, I have handled approximately eleven (11) FOIA requests for NETCOM, four (4) of which involved eDiscovery requests.

4. As part of the ARCYBER enterprise, NETCOM's mission does not involve overseeing, managing, or auditing state or federal elections, certifying election results, or storing reports related to civilian election processes.

### NETCOM'S OPERATION OF THE DEPARTMENT OF THE ARMY'S INFORMATION NETWORK

5. NETCOM is a subordinate command of U.S. Army Cyber Command (ARCYBER), and its headquarters is located at Fort Huachuca, Arizona. NETCOM operates the Department of the Army's unclassified information network using the Army 365 ("A365") platform. The A365 platform is owned and operated by Microsoft, which provides A365 services to the Department of the Army under contract. A365 services include Microsoft Office 365 products, specifically Outlook, Teams, OneNote, and SharePoint all tailored to the Army's particular needs.

6. The organization and management of unclassified files hosted within the secure, impact-level approved A365 ecosystem are strictly structured to ensure efficient, secure, and role-based access to mission-critical data.

7. NETCOM operates the A365 network for the Department of the Army by managing its global cloud infrastructure and securing identity verification through strict Identity, Credential, and Access Management (ICAM) protocols. NETCOM coordinates with subordinate Network Enterprise Centers (NECs) to deliver standardized, secure collaboration tools to soldiers and civilians worldwide within a secure framework.

8.   Unclassified information, encompassing both routine administrative documents and Controlled Unclassified Information (CUI), is systematically organized into hierarchical site collections that closely mirror commands' operational frameworks. This architecture includes dedicated spaces for various directorates, subordinate units, and specialized project teams.

9.   These primary site collections branch out into distinct document libraries and project-specific subsites for Army commands, which are governed by stringent ICAM protocols to restrict file visibility and editing privileges exclusively to authorized personnel with a validated need-to-know. Furthermore, this centralized SharePoint repository is deeply integrated with the broader Microsoft A365 suite, serving as the foundational data backbone for collaborative efforts.

10. Individual authorized users possess the ability to communicate and coordinate seamlessly with other personnel across the command and the broader Department of War using integrated applications such as Microsoft Outlook for e-mail and Microsoft Teams for real-time chat, voice, and video conferencing.

11. The data generated through these diverse communication channels is fundamentally intertwined with the underlying SharePoint architecture. While personal e-mails residing in an individual's Exchange Online mailbox (Outlook) are not indexed within SharePoint, files shared directly within Teams channels, collaborative documents distributed via e-mail, and the records of collaborative sessions are automatically ingested and stored within corresponding SharePoint document libraries or interconnected backend databases. Such holistic integration ensures that all unclassified communications and shared files are easily retrievable for operational continuity while remaining subject to automated data loss prevention (DLP) policies, comprehensive auditing, and compliance tracking to maintain digital security across the enterprise.

3

12. This integration enables secure searches utilizing the eDiscovery application as well as individualized localized searches, standardized ICAM protocols, and seamless cross-command collaboration. Ultimately, this structured separation combined with enterprise-level interoperability allows subordinate commands to maintain data autonomy while ensuring synchronized, secure resource sharing.

13. To maintain operational efficiency and security, searches within this integrated environment are not open-ended and require specific targeting criteria. Targeted searches require the requestor to provide specific criteria, namely the names and associated e-mail addresses of personnel anticipated to have responsive information, augmented by deliberate keyword search terms.

14. The eDiscovery tool for A365 is the centralized compliance solution used by NETCOM to identify, preserve, and collect electronic information across the entire A365 environment, including Outlook (e-mails), SharePoint, Teams, and OneDrive.

### A365 SEARCH REQUESTS PURSUANT TO FOIA

15. Search requests conducted on the A365 eDiscovery tool are the primary and most widely used method of searching and retrieving Army unclassified data created or stored on the A365 platform in response to FOIA requests submitted by the appropriate Department of the Army FOIA Office.

16. As the NETCOM FOIA Officer, I do not have the authority to submit search requests in eDiscovery for data created, sent, or received by A365 account owners outside of NETCOM personnel. I only have authority to request data created, sent, or received by NETCOM personnel. The command to which non-NETCOM personnel are assigned must submit search requests in

eDiscovery pursuant to FOIA for information a requestor believes would reside with personnel assigned to that other command.

17. In summary, while NETCOM as a command services the ability to conduct eDiscovery searches pursuant to FOIA, those searches must be submitted by the appropriate Army command with the required information, *e.g.*, personnel names, associated e-mail addresses, and key search words. The appropriate command is that Army command to which the personnel were assigned at the identified time within the FOIA search request. The NETCOM FOIA Office does not have carte blanche authority to request eDiscovery search requests pursuant to FOIA for the entirety of the Army.

18. To process FOIA requests, identification of the specific personnel names and associated e-mail addresses of the personnel whose records are subject to the inquiry, along with key search word terms, are required. This requirement is rooted in two fundamental constraints:

a. From a technical standpoint, the eDiscovery platform is designed to target specific custodians rather than conduct blind sweeps. The system's architecture dictates that keyword searches cannot be executed in a vacuum; they must be directed at specific, identifiable data repositories. Providing the exact names and e-mail addresses, along with key search word terms, supplies the system with the necessary routing parameters, enabling it to isolate the correct accounts, apply the designated keywords, and successfully execute the search.

b. From an authoritative perspective, a clear operational nexus must be established between the requested Army individuals, their employment, and the scope of the FOIA request. Specifically, the personnel identified must have been actively assigned to and working at NETCOM, or the requesting entity, during the time period identified in the FOIA request. I am not

5

authorized to submit search requests involving individuals who were not assigned to NETCOM during the time period of the FOIA request.

19. As outlined below, eDiscovery search requests are technically reliable for identifying responsive records based upon requestor-supplied parameters, if the requestor has supplied sufficient information and sent the request to the appropriate office.

20. FOIA-related requests from appropriate Army commands to search A365 data using eDiscovery are processed as follows:

a. Authorized users, who are Department of the Army personnel with access to the Army's SharePoint site to submit a search request in the eDiscovery tool, including FOIA Officers like myself, define "Custodians" (specific military or civilian personnel along with their associated e-mail addresses) and "Data Sources" (specific document repositories) to be searched. The tool uses Keyword Query Language allowing for precise filtering by such items as keywords, date ranges, and sender/recipient.

b. In order to conduct a search in eDiscovery, the personnel names, associated e-mail addresses, and key words to be searched are all required. An eDiscovery search cannot be conducted without each of those three pieces of information. The eDiscovery tool searches the deep backend index of A365. This includes content that standard SharePoint searches cannot reach, such as deleted items still within the "Recoverable Items" folder or hidden Teams chat logs stored in Exchange. Pursuant to AR 25-55, para. 3-6.*b*., a FOIA request must contain a "reasonable description" of the requested information to be considered actionable. Because the Army's eDiscovery platform structurally requires personnel names, associated e-mail addresses, and specific keywords to function, requests lacking these three vital data points cannot be executed. Consequently, such requests fail to provide "enough information to permit an

6

organized, nonrandom search for the record based on the Army activity's filing arrangements and existing retrieval systems."

c. Upon receipt of a FOIA search request from an Army authorized user, the A365 contractor (Microsoft) conducts the requested search using proprietary tools. Responsive A365 data and potentially-responsive data (for example, encrypted e-mails may be responsive to a keyword search, but Microsoft cannot decrypt the e-mail) are provided to the Army requestor (*e.g.*, FOIA Officer for the Army command to whom personnel were assigned at the identified time frame within the search request) in .pst format (for e-mails) or the format in which the data is stored (for non-email data, such as e-mail attachments).

d. The Army requestor will then conduct a final review of the information provided for releasability to determine whether any FOIA exemptions or other privileges apply.

e. The Army requestor will then provide the responsive, releasable material to the individual who submitted the FOIA request.

### PLAINTIFF'S FOIA REQUEST

21. On or about November 21, 2025, Plaintiff's FOIA request was received by NETCOM's FOIA Inbox, which I received in my capacity as NETCOM's FOIA Officer. The FOIA request asked for the following:

"1. Final reports, assessments, or executive-level summaries prepared between November 6, 2024, and November 20, 2025, discussing a post-election audit, 2024 presidential election popular vote evaluation, or voting system investigation result.

2. Communications, briefing materials, or talking points exchanged between Federal agencies, including but not limited to DHS, CYBERCOM, ARCYBER, FBI, ODNI, NSA, DOD, CIA, DOJ, or the White House, between November 6, 2024, and November 20, 2025, regarding any final report, final evaluation, investigation result, or post-election audit result for the 2024 U.S. Presidential election.

3. Internal communications transmitted anytime between November 6, 2024 to November 20, 2025, via email, Teams, Signal, or Slack messages, text message,

calendar invitation, call transcript, or draft document, having been exchanged between any Federal agency's staff, and having content identifying any one of a post-election audit, 2024 U.S. Presidential election certification report, a popular vote audit, a voting system investigation result, an estimated vote percentage shift, a cast vote record audit, a DHS election audit, a CYBERCOM election audit, a FBI election audit, an ODNI election audit, a NSA election audit, a DOD election audit, a CIA election audit, or a DOJ election audit.

In order to help you determine my status for the purpose of assessing fees, you should know that I am an individual seeking information for personal use and not for commercial use." *See* Exhibit 1.

22. Based on the subject matter of Plaintiff's request, I determined that it did not seek information that would originate with NETCOM. Plaintiff did not identify NETCOM in his FOIA request, and NETCOM has no involvement in overseeing, managing, or auditing state or federal elections, or certifying election results. Although NETCOM operates the A365 network, I do not have the authority to submit A365 eDiscovery FOIA search requests on behalf of other Army commands or entities independent from the Department of the Army. Instead, if another Army command were the appropriate recipient of a FOIA request based on its subject matter or the custodians identified, that command would be responsible for submitting an eDiscovery search request for responsive records. However, information that is not communicated on the Army's information network would not be located through an A365 eDiscovery search.

23. Additionally, Plaintiff failed to provide the information required for a "reasonable description of the record or records requested" in accordance with AR 25-55. Plaintiff only provided key words. He failed to provide personnel names or associated e-mail addresses to be searched. The A365 eDiscovery application will not allow a search to be submitted without personnel names and associated e-mail addresses to be searched. I was also unable to assist Plaintiff in providing a reasonable description because I am not aware of any Army component or custodian likely to have records responsive to his request, based on the subject matter of the

8

request and its failure to identify custodians. Specifically, I am not aware of any Army component or custodian involved in overseeing, managing, or auditing state or federal elections, or certifying election results.

24. Based on my determination that Plaintiff's FOIA request did not seek information likely to be found within records under NETCOM's own authority, I reached out to Headquarters, Department of the Army ("HQDA") G-6 Directorate (*e.g.*, information office) to determine whether any appropriate Army entity could be identified for referral in accordance with AR 25-55, para. 3-11.*a*. ("If an Army activity receives a request for records that another Army activity originated, it will contact the originating activity to determine if it also received the request and, if not, obtain concurrence from the originating activity to refer the request."). HQDA G-6 did not identify another Army command that would potentially have responsive information.

25. As "ARCYBER" was the singular Army entity referenced in the Plaintiff's FOIA request, and recognizing that ARCYBER Headquarters (HQ) is physically distinct from NETCOM, I initiated contact with my FOIA counterpart at ARCYBER HQ. My counterpart informed me that Plaintiff had already submitted a similar FOIA request to ARCYBER HQ and had already submitted an administrative appeal relating to that request. Because ARCYBER HQ was already handling that request, there was no basis to refer the NETCOM request to ARCYBER HQ. ARCYBER HQ also informed me that Plaintiff had not identified any personnel names or associated e-mail addresses to ARCYBER HQ, and ARCYBER HQ likewise was unable to identify a potential custodian because ARCYBER HQ also had no involvement in overseeing, managing, or auditing state or federal elections, or certifying election results. ARCYBER HQ thus also could not submit a search request of ARCYBER HQ records using the eDiscovery tool.

26. As a result of Plaintiff's failure to identify any personnel names and associated e-mail addresses, and even though Plaintiff's request did not identify any personnel assigned to NETCOM during the request's identified time frame, I nevertheless conducted an A365 eDiscovery search of the Army-365 environment limited to records associated with the NETCOM FOIA Office's e-mail address, as that was the only information over which I had authority to search.

27. The data source name I included in the search was that of my office – USARMY Ft Huachuca NETCOM Mailbox FOIA. I included my office's associated e-mail address – usarmy.huachuca.NETCOM.mbx.foia@army.mil. The search word query I included was the following - "(Date=2024-11-06..2025-11-20)("DHS" OR "CYBERCOM" OR "FBI" OR "ODNI" OR "NSA" OR "DOD" OR "CIA" OR "DOJ" OR "WHITEHOUSE" OR "PRESIDENT ELECTION")."

28. The search returned no results, as provided in the attached response to Plaintiff, sent by e-mail on February 2, 2026, which informed Plaintiff that a search of the "requested information using the eDiscovery tool to search the Army-365 environment, resulted in 'no records found,'" and informed Plaintiff that he could file an administrative appeal within 90 days of the date of the letter. *See* Exhibit 2. Plaintiff had a follow-up question regarding the "no records found" response, to which I responded. *See* Exhibit 3. To date, Plaintiff has not filed an administrative appeal regarding NETCOM's response.

29. My actions as NETCOM FOIA Officer were fundamentally restricted by the limitations of Plaintiff's FOIA request, which pertained to matters outside NETCOM's purview and failed to provide a "reasonable description" under AR 25-55 by omitting the personnel names and associated e-mail addresses systematically required for an A365 eDiscovery search or proper

10

referral. As a result, I was unable to identify any other location where records responsive to Plaintiff's request were likely to be found. Subject to those limitations, all NETCOM files likely to contain responsive information were searched.

      Executed this 11th day of June 2026.

JARAMILLO.ANN. Digitally signed by
MARIE.123357394 JARAMILLO.ANN.MARIE.1233
573945
5 Date: 2026.06.11 08:10:59
-07'00'

ANN-MARIE JARAMILLO
Freedom of Information Act Officer
Network Enterprise Technology Command